[Civ. No. 15801.   First Dist., Div. Two.   May 3, 1954.]

DEPARTMENT OF CALIFORNIA, VETERANS OF FOR-
EIGN WARS OF THE UNITED STATES (a nonprofit
Corporation), Appellant, v. MICHAEL B. KUNZ et al.,
Respondents.

J. R. Klawans and Orville C. Pratt for Appellant.

Edmund G. Brown, Attorney General, Irving H. Perluss, Assistant Attorney General, William L. Shaw, and Vincent P. Lafferty, Deputy Attorneys General, for Respondents.

NOURSE, P. J.—The Department of California, Veterans of Foreign Wars of the United States appeals from a judgment holding that it was not exempt from the payment of contributions under the Unemployment Insurance Act (3 Deering's Gen. Laws, Act 8780d, herein further called the Act) and liable for assessments of such contribution from October 1, 1945, to December 31, 1949, with penalties and interest. Following an audit made, assessment for contributions was levied on appellant (who had failed to register with the Department of Employment as required by § 36 of the Act) for the first time in the year 1948, retroactive so far as not barred by the statute of limitations, to wit, from October 1, 1945, to September 30, 1948. The California Unemployment Insurance Appeals Board denied appellant's petition for reassessment September 8, 1949, Tax Decision 785.

Appellant thereafter paid under protest the assessment over the last quarter of 1949, and after exhaustion of administrative remedies (the decision of the Appeals Board as to this quarter was based on the prior decision No. 785) on January 24, 1951, filed this action for refund in the superior court under section 45.11(d) of the Act. On November 8, 1948, appellant had applied for elective coverage of its employees (§ 15 of the Act) and since 1950 has paid contributions, it being left in abeyance until the final decision in this case whether its coverage will be considered elective or compulsory. No payment has been made for any period prior to the last quarter of 1949. On February 10, 1950, the Department of Employment filed in the recorder's office in San Francisco a certificate of delinquent contributions under section 45.10 of the Act with respect to all assessment prior to the last quarter of 1949.

In this action respondents denied that appellant was exempt from contribution, denied that appellant was entitled to a judicial decision as to the principle of the exemption without having first paid all assessments imposed, and cross-complained for the amount of all assessments until and including the year 1949 with penalties and interest.

Although payment under protest and claim of refund seems to be the only manner in which an employment unit could institute a court action as to the legality of an assessment (§ 45.11(d) of the Act; *Scripps etc. Hospital* v. *California Emp. Com.*, 24 Cal.2d 669, 673 [151 P.2d 109, 155 A.L.R. 360]) respondents do not indicate any provision of the statute which prevents the application of such procedure to one separate assessment only. If such a court decision as to one later assessment only would not affect the validity of earlier assessments not paid, such would not be decisive of the situation in this case because respondents themselves submitted the matter of the prior assessments to the decision of the court in their cross-actions under section 45.1 of the Act. Such action is considered a normal civil action (*California Emp. Com.* v. *Sutton*, 69 Cal.App.2d 181 [158 P.2d 949]) and respondents do not cite any authority for the contention that in such action the defense that the employment unit was exempt from contribution could not be presented. In such an action the certificate of respondents is, according to the provisions of section 45.1 of the Act, prima facie evidence only. Appellant does not deny that it has the burden of proving the exemption.

As to the merits, appellant's claim of exemption is based on two grounds, first that it is a nonprofit, nonstock corporation, organized and operated exclusively for charitable and educational purposes, no part of the net earnings of which inures to the benefit of any private stockholder or individual and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting to influence legislation (§ 7 (g) of the Act); second that its employees are in the employ of an instrumentality of the State of California (§ 7 (f) of the Act), the funds for their employment being provided by the state under section 699.5 of the Military and Veterans Code. The court found that appellant is a nonprofit, nonstock corporation and that no part of its net earnings inure to the benefit of any individual, but that it does not operate exclusively for charitable and educational purposes, that it is not true that no substantial part of its activities relate to the carrying on of propaganda or the attempt to influence legislation and that it is not an instrumentality of the State of California.

There is no finding as to the character of the purposes for which appellant is *organized*. Appellant's contention that on this point a finding favorable to it is implied in the finding that it is a nonprofit corporation, no part of the earnings of which inure to the benefit of any individual is incorrect. Under section 593, Civil Code old, now section 9200, Corporations Code, a nonprofit corporation may be formed for any lawful purposes, among which "social" purposes are expressly named, and therefore not only for such purposes as would cause them to be exempt from unemployment contribution. In this case a finding that appellant was organized for charitable and educational purposes exclusively could not have been made. Its articles, received in evidence, include the following which show without dispute that the purposes for which it is organized are in part recreational, social and fraternal:

## "ARTICLE III."

"That this corporation and association is organized and operates exclusively for charitable, scientific, educational and *recreational* purposes and not for profit. That the corporation intends to provide for the perpetuity and continuity of its existence and that said corporation will have no capital stock but that rights therein shall be limited to members; that the source of its income is from per capita tax and *social activities* of its members and all funds devoted to the pur-

poses herein set forth and for the benefit of its members as a body.

"ARTICLE V."

"That the purposes for which this Corporation is formed are:

"*Fraternal,* patriotic, historical and educational.

"*To preserve and strengthen comradeship among its members.*

"To assist worthy comrades.

"To perpetuate the memory and history of our dead, and to assist their widows and orphans.

"To maintain true allegiance to the Government of the United States of America, and fidelity to its constitution and laws.

"To foster true patriotism.

"To maintain and extend the institutions of American freedom.

"To preserve and defend the United States from all her enemies, whomsoever."

■ Fraternal purposes, mentioned in the first place, are not charitable or educational. ■ "Fraternal or social organizations are not exempt from making unemployment insurance contributions." (81 C.J.S. 186.) ■ "An association or organization, in order to be exempt on the ground that it is engaged in charitable, benevolent, educational, or scientific work, has been required to be both organized and operated exclusively for such purposes; if either element fails, the exemption does not apply." (81 C.J.S. 181-182; *Chamber of Commerce* v. *Unemployment Comp. Com.,* 356 Mo. 323 [201 S.W.2d 771, 772]; *Northeast Osteopathic Hospital* v. *Keitel,* 355 Mo. 740 [197 S.W.2d 970, 974]; *American Medical Assn.* v. *Board of Review,* 392 Ill. 614 [65 N.E.2d 350, 352-353]; *In re American Agriculturist, Inc.,* 264 App.Div. 971 [37 N.Y.S.2d 98]; *Murphy* v. *Concordia Pub. House,* 348 Mo. 753 [155 S.W.2d 122, 126, 136 A.L.R. 1461].) These cases also hold that the question whether the purpose for which an organization is *organized* entitled it to exemption is judged according to its articles or charter. However in *Bohemian Gymnastic Assn. Sokol of City of N. Y.* v. *Higgins,* 147 F.2d 774, cited by appellant, a judgment holding plaintiff exempt as organized and operated exclusively as an educational organization was affirmed notwithstanding the fact that its charter mentioned over and above clearly educational and

cultural subjects: "To provide for recreational and social activities for its members and to foster friendship and mutual respect." Without commenting on this provision the court held that the continuous pursuit of physical and cultural instruction by plaintiff differentiated it from a mere social club. It does not seem clear how this decision can be reconciled with the cases cited above and the statute's requirement of *organization* for educational, etc., purposes exclusively. ■ It is true that exemption provisions of unemployment compensation acts for charitable and other public welfare institutions are liberally construed (*Cedars of Lebanon Hospital* v. *County of Los Angeles*, 35 Cal.2d 729, 735 [221 P.2d 31, 15 A.L.R.2d 1045]; *Scripps etc. Hospital* v. *California Emp. Com., supra*, 24 Cal.2d 669, 676-677; Ann. 155 A.L.R. 369; 81 C.J.S. 32); the contrary position defended by respondents might have considerable force "in view of the beneficent purposes of the Social Security Act to protect employes" (*City Club of Milwaukee* v. *United States*, 46 F.Supp. 673, 674) but is contrary to accepted law. However liberal construction does not permit the ignoring of express limitations on such statutory exemptions. (*Better Business Bureau* v. *United States*, 326 U.S. 279, 283 [66 S.Ct. 112, 90 L.Ed. 67].) It is on the ground of the too wide purpose for which it was organized alone that the Unemployment Insurance Appeals Board denied appellant's claim to charitable exemption and this position seems well taken.

■ With respect to appellant's operation, the main witness, appellant's quartermaster adjutant Hermann, testified that appellant is a department of the national organization "Veterans of Foreign Wars of the United States" and as such a clearing house for payments from the California posts to the national organization; it does not conduct any social activities itself. Its main activity is the rehabilitation of veterans in connection with the federal Veterans Administration under contract with the Veterans Welfare Board of the State of California, in which work 82.2 per cent of appellant's employees are employed, and 75 per cent of the costs of which are paid by the state. The work of the 17.8 per cent of the employees not exclusively so employed still contributes for a large percentage to the rehabilitation work. This service is open to all veterans, not only to members. Further activities relate to obtaining members, an educational program to educate the veterans of California "to their rights and entitlements" and a hospital program. No capital is built up. No

money is spent for political or propaganda purposes. However from the audit made and the cross-examination of Mr. Hermann the following points were developed which are urged by respondents in support of the court's findings that the operation of appellant does not satisfy section 7 (g) of the Act. One of appellant's activities is the giving of a California-Washington dinner to the California delegation in Congress to develop goodwill. In 1948 approximately $700 was spent for such a dinner and booked under "Legislative Expense." In the audit of 1945-1946 there appeared an amount of $1,390 under "Legislation," but Mr. Hermann denied that it was used for influencing legislation, although he could not say what exactly the item represented. He denied that on the departmental level money was spent for lobbying. Mr. Hermann admitted that under "Legislation-Sacramento dinner" an item of $429 appeared on the 1946-1947 books representing costs of a dinner to have their commander-in-chief meet prominent persons in Sacramento and that at an annual encampment appellant officially endorsed and sponsored referendum proposition No. 2 which would have legalized greyhound racing in California, because the proceeds would have been distributed among veterans' organizations for their work under section 699.5, Military and Veterans Code. Whether the above evidence showed that a substantial part of appellant's activity was attempting to influence legislation and carrying on propaganda, notwithstanding the large extent of appellant's subsidized activities under section 699.5 is primarily a matter for the trial court and we cannot say as a matter of law that its finding to that effect was unsupported. As appellant cannot, at any rate come under the exemption of section 7 (g) of the Act on the two grounds treated herein, we need not decide whether the fact that appellant's activities, educational and otherwise, were in large part intended to make veterans more conscious of and to further their financial and economic rights, and were limited to a restricted group, prevented it from being operated exclusively for charitable and educational purposes and brought it in the same category with labor unions, bar associations, medical associations, business leagues and such, which are not recognized as charitable.

Appellant's contention that it is exempt as an instrumentality of the state (§ 7 (f) of the Act) because it furthers a public purpose, the assisting of veterans in presenting and pursuing claims under contract with the state (Mil. & Vet.

Code, § 699.5) and because the state pays 75 per cent of the costs of said assistance is without merit. Public purposes can be accomplished in different manners, public, private or mixed, and not every activity of a private corporation, association or individual contributing to the accomplishment of such governmental purpose constitutes it a governmental or public instrumentality or agency. So it has been held that a corporation which operated a bath house in a national park under lease and regulations of the Secretary of the Interior was not exempt from state unemployment contributions (*Buckstaff Bath House Co.* v. *McKinley*, 308 U.S. 358 [60 S.Ct. 279, 84 L.Ed. 322]), the Supreme Court stating at pages 362, 363: "The mere fact that a private corporation conducts its business under a contract with the United States does not make it an instrumentality of the latter. . . . The control reserved by the Government for protection of a governmental program and the public interest is not incompatible with the retention of the status of a private enterprise." It has also been held that a private construction company constructing levees for the federal government was not exempt from state taxation, not being a governmental instrumentality (*Trinityfarm Constr. Co.* v. *Grosjean*, 291 U.S. 466, 472 [54 S.Ct. 469, 78 L.Ed. 918]) and the same was held to apply where the contractor worked under a cost plus contract so that the tax was passed on to the government itself. (*Curry* v. *United States*, 314 U.S. 14, 18 [62 S.Ct. 48, 86 L.Ed. 9].)

Although no definition of government instrumentality will correctly cover all borderline cases it can be said that the characteristic government instrumentality is "public in nature, created and wholly owned by the government for the convenient prosecution of its governmental functions, existing at the will of its creator. . . ." (*Unemployment Comp. Com.* v. *Wachovia Bank & T. Co.*, 215 N.C. 491 [2 S.E.2d 592, 595].) See for the distinction of a governmental agency or instrumentality and a political subdivision (municipal corporation), also mentioned in section 7 (f) of the Act, *Laguna Beach County Water Dist.* v. *County of Orange*, 30 Cal.App. 2d 740, 743 [87 P.2d 46] (overruled as to another point *Rock Creek etc. Dist.* v. *County of Calaveras*, 29 Cal.2d 7, 12 [172 P.2d 863]); although both are governmental in origin (created by Constitution or legislation) and normally have certain governmental powers, those of an agency are as a rule more restricted than those of a subdivision. It is the lack of governmental origin, ownership and

powers that shows clearly that appellant is not a governmental instrumentality in the sense of the Act, the more so because the Act, as a general welfare statute designed to reduce economic insecurity from unemployment, is subject to a liberal construction to effectuate its purpose and exemptions should therefore not be extended further than clearly justified by their language. (*California Emp. Com.* v. *Butte County etc. Assn.*, 25 Cal.2d 624, 630-631 [154 P.2d 892]; an exception as to charitable exemptions is mentioned earlier herein.) Section 699.5, Military and Veterans Code, permits the making of contracts with veterans' organizations, like those under which appellant works, only with organizations which have for five years regularly rendered such services, and only if the services can, owing to the confidential relation involved, not satisfactorily be rendered otherwise. The contracts with appellant expressly provide that appellant shall not be considered an agent or employee but an independent contractor responsible as to results, but not as to means or methods employed. There was no evidence showing that the actual relation of appellant to the state differs from the one described in the statute and the contracts. A certain degree of control and regulation by a party who reimburses all or most of the expenses is normal (e.g., in cost plus contracts) and does not change the essential character of the relation of the parties. It is a clear case of a private corporation whose services the state uses for its public purpose without constituting it a governmental agency.

Judgment affirmed.

Dooling, J., and Kaufman, J., concurred.

A petition for a rehearing was denied June 2, 1954, and appellant's petition for a hearing by the Supreme Court was denied June 30, 1954. Shenk, J., and Schauer, J., were of the opinion that the petition should be granted.