*Cause transferred.*

---

(No. 11251.—Reversed and remanded.)
THE INTER-STATE FINANCE CORPORATION, Defendant in Error, *vs.* THE COMMERCIAL JEWELRY COMPANY, Plaintiff in Error.

*Opinion filed October 23, 1917.*

1. EVIDENCE—*contents of existing, obtainable book of original entry cannot be proved by parol.* The material contents of an existing book of original entry which is obtainable cannot be proven by parol testimony, as the book itself is the best evidence.

2. SAME—*a witness may testify as to general result of examination of books.* Where the originals consist of numerous documents, books, papers or records which cannot conveniently be examined in court, and the fact to be proved is the general result of an examination of the whole collection, any competent witness who has examined the originals may testify as to such result, provided it is capable of being ascertained by calculation.

3. SAME—*opinion of a witness that notes are uncollectible is not admissible.* In an action to recover the amount represented by certain promissory notes which the defendant had agreed to repurchase from plaintiff whenever the makers should be in default, the plaintiff may prove that the notes have not been paid and that the makers are insolvent, but it cannot prove by the opinion of a witness that the notes are uncollectible.

4. PRACTICE—*point cannot be raised for first time in Supreme Court.* The point that the contract sued upon was *ultra vires* the defendant corporation and void cannot be raised in the Supreme Court where it was not urged in the trial court or Appellate Court.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. JOSEPH E. RYAN, Judge, presiding.

ALBERT O. OLSON, for plaintiff in error.

EDWARD L. ENGLAND, for defendant in error.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

An action was instituted by defendant in error July 3, 1913, in the municipal court of Chicago, for a balance alleged to be due on accounts and bills receivable purchased by defendant in error under a contract whereby plaintiff in error guaranteed the payment of the balance due on contracts and accounts. On a trial before a jury in said court a verdict was rendered in favor of defendant in error for $2143.82. From the judgment entered thereon an appeal was taken to the Appellate Court, where the judgment of the municipal court was affirmed. The cause has been brought to this court on petition for *certiorari*.

The defendant in error is a Pennsylvania corporation. Originally, when negotiations as to these transactions began between the parties hereto, plaintiff in error was a partnership, but later it was incorporated. Defendant in error purchased from plaintiff in error the accounts of a number of jewelry dealers under a contract providing that for valuable considerations .the party of the first part agreed to "sell, assign, transfer and set over unto the said party of the second part, from time to time, such contracts or open ac-

counts, together with acceptances or notes belonging thereto, as the party of the first part may wish to sell and the party of the second part may wish to purchase, during the life of this agreement, in consideration whereof the party of the second part hereby agrees to purchase, or cause to be purchased, such contracts or open accounts, and the acceptances or notes belonging thereto, and to pay, or cause to be paid, to the party of the first part therefor, a sum equaling eighty-eight per cent of their total net face value," etc. The party of the first part further agreed to legally assign all contracts or open accounts on the back of the same and to indorse properly the acceptances or notes, and to notify each customer of the sale and assignment of his or her open account. And the party of the first part further agreed, when requested by the party of the second part, to immediately re-purchase all contracts or open accounts, and the acceptances or notes belonging thereto, and make settlement of the same. Further provision was also made in the contract for the liability and procedure in case of failure to settle for defaulting contracts and for the re-assignment of the same. In view of our conclusions as to certain matters in connection with the trial of this case it is unnecessary for us to set out in further detail the provisions of said contract.

Claude E. Tucker, secretary of defendant in error, testified that his company bought a number of accounts or installment contracts and a series of notes, for which it paid seventy-eight per cent in cash for the first few installments and later paid eighty per cent; that the purchase of these accounts, etc., was evidenced in writing; that his company, in making charges in its books, used the voucher system. The entries in the regular books were dictated by the witness, who testified that the entries were approved and based on the vouchers and that the vouchers were filed, the vouchers being the first or original entries of the transactions made in the office. During his testimony twelve schedules

were identified and offered in evidence which set out the accounts purchased by his company, and he testified from the memoranda contained in these schedules and vouchers to the amount that was due the defendant in error company on said accounts. It is objected here, as it was in the trial and the Appellate Courts, that his testimony on this question was incompetent without having in court and in evidence all the books in which these various items were entered. The material contents of an existing book of original entry which is obtainable cannot be proven by parol testimony, as the book itself is the best evidence. Account books, if in existence, are the best evidence of their contents, and a witness may not state the condition of such accounts from memory while such books are accessible. (10 R. C. L. 906.) Where, however, the originals consist of numerous documents, books, papers or records which can not conveniently be examined in court, and the fact to be proved is the general result of an examination of the whole collection, evidence may be given as to such result by any competent person who has examined the documents, provided the result is capable of being ascertained by calculation. In many instances any other method would cause a great loss of time and tend to confuse, rather than assist, the jury. (*People* v. *Gerold,* 265 Ill. 448, and authorities there cited.) As we understand this record, all the vouchers used by defendant in error in its book system referring to these transactions were in evidence, as well as all the schedules containing the accounts purchased by it, including the assignments and guaranties, and therefore it was a mere matter of computing from a large number of items the amount due from the various claims. It seems that all of the books were not present at the time of the trial. The court might have required the production of the original books so far as they were accessible, and should have done so had that question been raised by counsel for plaintiff in error during the trial, but, so far as we can find from the

record before us, no such question was raised. We do not think any error was committed in allowing this witness to testify as to his conclusions, from these accounts, concerning the amount due.

Counsel for plaintiff in error further argues that the evidence fails to prove that plaintiff in error assumed and became liable for the obligations of the former co-partnership. As we understand this record, the jury might very properly find from the evidence that after the original contract had been entered into between the partnership and defendant in error, defendant in error furnished the partnership sums of money and received from it assignments, schedules and guaranties, and that after the plaintiff in error was organized as a corporation it continued in the same manner and method to transfer to defendant in error other accounts and guaranties, without in any way notifying defendant in error that there had been any change in the concern or in the method and manner of doing business; that when plaintiff in error was organized the corporation took over the business of the former co-partnership on the same kind of guaranties and assignments and received money in the same way when these accounts were sold and transferred as had been done before the incorporation. All the papers in these transactions before the formation of the corporation are substantially in the same form as those used after the corporation was organized. Negotiations on behalf of plaintiff in error were conducted by the same man who was the agent of the partnership concern, and the contract or assignment, in all cases, seemed to have been signed by him as manager. The evidence also tends strongly to show that the plaintiff in error had received large sums of money from the former contracts of the partnership and has never heretofore objected, in any way, to carrying out the contracts of said partnership. Under such a state of facts we think the jury were justified in holding plaintiff in error bound by the terms of the partnership contracts.

It is further urged by counsel for plaintiff in error that the trial court improperly permitted the witness Tucker to state his opinion as to the value of the uncollected accounts in defendant in error's possession. The following questions and answers appear in the testimony:

Q. "Are you familiar with the accounts, notes and acceptances, etc., turned over to you by the Commercial Jewelry Company?

A. "Yes, sir.

Q. "In your opinion are any of them collectible?

A. "No, sir.

Mr. Olson, counsel for plaintiff in error: "I move that the answer be stricken out. The witness has not shown himself competent to testify as an expert as to collectibility of the accounts in suit, no proper foundation has been shown, and the statement is incompetent and a conclusion.

The court: "Let it stand."

The Appellate Court held that these questions and answers were proper, on the ground that Tucker testified that from a large and varied experience in the line of business under consideration he knew the accounts were uncollectible; and furthermore, because the contracts or assignments in question provided that plaintiff in error should pay the unpaid balance whenever the accounts or contracts should be in default, and that defendant meant such accounts "as shall have become through the bankruptcy of the obligors, or through any other cause, uncollectible by suit at law." If Tucker's testimony is admissible on this point it must be because it could be considered expert testimony. It is a familiar principle of evidence that the opinions of witnesses are generally incompetent, but this rule is subject to important exceptions. "Evidence of this character is not admissible upon subjects that are within the knowledge of all men of common education and experience." (Jones on Evidence,—2d ed.—sec. 359.) Evidence of this kind is not competent to decide various questions that are to be

submitted to the jury for decision. "Clearly, it is not the province of the expert to act as judge or jury, hence all questions calling for his opinion should be so framed as not to call upon him to determine controverted questions of fact." Such witnesses "must not usurp the province of the court and jury by drawing those conclusions of law or fact upon which the decision of the case depends." (Jones on Evidence,—2d ed.—sec. 372.) In ascertaining the value of promissory notes "the inquiry should be as to the solvency of the maker and his ability to pay. Questions as to the value of the notes should not be put." (13 Ency. of Evidence, 526, and cited cases.) The authorities seem to support the rule just quoted. In *Atkinson* v. *Rochester Printing Co.* 43 Hun, 167, it is said (p. 173) : "The rule is, that where promissory notes or commercial paper is converted the measure of damages is the nominal or face value of the paper, unless it be reduced by showing payment, insolvency or some fact to invalidate the paper. [Citing authorities.] It is undoubtedly proper to show the value of property by witnesses who are familiar with the property and its value, but as to choses in action, such as commercial paper, a different rule exists. The paper itself is of no value, but it is the evidence of debt or an agreement to pay. The question is, therefore, as to the ability to pay of the maker or person who by the terms of the instrument is to pay the same and as to whether the instrument is valid." The opinion goes on to state it would have been competent to have shown the insolvency of the debtor, or that the draft had been paid, or that it was worthless for any other valid reason. A very illuminating case on this point is *Anderson* v. *First Nat. Bank,* 6 N. D. 497, where it was attempted to prove by expert testimony the value of certain notes, based on the information of the witness as to the general value of commercial paper in the market, and it was shown by other proof that the makers were solvent and that the notes were fully secured by real estate. The

court stated that the promissory notes of individuals have no market value and evidence of their market value by expert witnesses was incompetent. See, also, as sustaining the rule that the insolvency of the maker, and not expert testimony as to the value of the notes, is proper to be considered in deciding upon the admission of evidence of this kind, *Booth* v. *Powers,* 56 N. Y. 22; *Ingalls* v. *Lord,* 1 Cow. 240; *McPeters* v. *Phillips,* 46 Ala. 496; *Latham* v. *Brown,* 16 Iowa, 118; 2 Parsons on Contracts, *471. On principle we think the doctrine laid down in these authorities correct. The facts as to proving the solvency of the makers of these notes and acceptances, if presented in evidence, would fall within the knowledge of men of ordinary experience, and therefore there was no ground for expert testimony on the question of the value of these notes and acceptances in open market. The trial court erred in not sustaining the objection to these questions and answers of the witness Tucker, as those questions and answers related to a very material point involved on the trial of this case.

We do not think the wording of the contract quoted above and relied on by the Appellate Court in any way changes the conclusion as to the admissibility of this evidence. We think it is clear from the quoted provisions in the contract that it was the insolvency of the debtors that was the question involved, and therefore this general rule would apply on the admissibility of this evidence under the wording of this contract.

Counsel for plaintiff in error further suggests that the contract in this case falls within the reasoning of *Mercantile Trust Co.* v. *Kastor,* 273 Ill. 332, and therefore is *ultra vires* and void. It appears from the briefs that that decision was not rendered until after this case was tried in the lower court and had been appealed to the Appellate Court, and therefore this question was not raised in the trial court or Appellate Court. Under the repeated decisions of this court questions that are not raised in the trial or Appellate

Court cannot be raised here, therefore we express no opinion with reference to the validity of this contract.

Certain questions are raised in the briefs as to the instructions, but in view of the fact that this case must be reversed for the error in the admission of evidence, and these questions will probably not be involved in another trial, it will not be necessary to discuss or decide them.

For the error indicated the judgments of the Appellate and municipal courts will be reversed and the cause remanded to the municipal court for further proceedings in harmony with the views herein expressed.

*Reversed and remanded.*