(No. 28453.—

AMERICAN MEDICAL ASSOCIATION, Appellant, *vs.* THE BOARD OF REVIEW OF THE DEPARTMENT OF LABOR *et al.,* Appellees.

*Opinion filed January 23, 1946—Rehearing denied March 13, 1946.*

GEORGE MAURICE MORRIS, and T. V. McDAVITT, (MORRIS, KIXMILLER & BAAR, of counsel,) all of Chicago, for appellant.

GEORGE F. BARRETT, Attorney General, (WILLIAM C. WINES, of Chicago, of counsel,) for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellant appeals from an order of the circuit court of Cook county affirming a decision of the Board of Review of the Department of Labor, finding that appellant is not exempt from payment of unemployment contributions on account of the employment of one George James Such for the year 1938.

The sole question presented is whether appellant, as an employer, comes within the exempting provisions of section 2(f)(6)(G) of the Unemployment Compensation Act of Illinois, as in force in 1938. (Ill. Rev. Stat. 1937, chap. 48, par. 218.) The pertinent provisions of that section of the act were as follows: "(6) The term 'Employment' shall not include * * * (G) Service performed in the employ of a corporation * * * organized and operated exclusively for * * * charitable, scientific, * * * or educational purposes, * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual."

Appellant, a corporation not for profit and having no stockholders, was organized with the objects and purposes shown by its charter. These are "to promote the science and art of medicine and the betterment of public health." Its constituent associations are the State and territorial medical associations which are, or which may hereafter be, federated to form the American Medical Association, in accordance with its constitution and by-laws. Members in

good standing of constituent societies are *ipso facto* members of appellant, American Medical Association. A member becomes a Fellow of appellant by subscribing for appellant's *Journal* and paying annual dues. Participation in the work of the Scientific Assembly is restricted to Fellows who have paid all their current indebtedness. The House of Delegates, approximately 175 members, of whom 153 represent constituent associations, is the supreme policy-making body. It elects the members of the board of trustees, which functions like a board of directors and is responsible for major decisions in the interim between annual sessions of the House of Delegates. Under the constitution the board of trustees is authorized to appropriate funds to defray the expenses of the association. As of December 31, 1939, appellant's total assets were $4,429,699.20. Of those assets it owned a printing plant valued at $185,000. It employs approximately 630 persons. Its *Journal* is the official publication of the association. Its gross revenues for 1939 amounted to $1,700,853.99. Receipts from advertising were $908,790.58. Net earnings were $706,823.02. Income from investments was $84,938.91 and from other sources, $12,973.92, making a total income for that year of $804,735.85. About 30 per cent of the pages of the *Journal* is devoted to commercial advertising. Among the subjects discussed in the *Journal*, aside from scientific subjects, are income taxes, court decisions, proposed legislation, medical service plans, insurance policies, collection agencies, payment arrangement for medical care and medical fee schedules. The *Journal's* "organization section" is captioned, "Devoted to the Organization, Business, Economic and Social Aspects of Medical Practice."

This case arises on an application of George James Such on July 3, 1939, for benefits under the Unemployment Compensation Act for the year 1938. A referee of the Department of Labor, under a revised finding, recommended benefits which did not include, in its base, any wages earned

by him while employed by appellant, American Medical Association. The Board of Review on July 12, 1943, set aside the decision of the referee and found Such eligible for benefits based on his employment by appellant. The circuit court on *certiorari* sustained the finding of the Board of Review.

Though it is argued here that appellant is a charitable organization, no such claim was made in the court below and cannot be urged on review. *Inter-State Finance Corp.* v. *Commercial Jewelry Co.* 280 Ill. 116; *Skinner* v. *Glos*, 274 Ill. 58.

Appellant's counsel argue that the court gave too limited a scope to the term "scientific or educational purposes;" that the activities of an enterprise organized for scientific or educational purposes are exclusively for such purposes if those activities are incidental to, adhere to, and are mediate to and advance such purposes; and that the legislative policy of the State is to exempt from taxation corporations such as appellant.

Appellees, to sustain the judgment appealed from, insist (1) that the decision of the Board of Review should be taken as final unless it is against the manifest weight of the evidence; (2) the act should be liberally construed to the end that benefits are paid to unemployed workers; (3) appellant is not organized nor operated exclusively for charitable, scientific or educational purposes, and (4) appellant's net earnings inure to the benefit of its members.

That appellant is organized as a scientific and educational association is not denied by appellees. Whether appellant association was organized exclusively for scientific or educational purposes must be determined by its charter and laws. Whether it is operated exclusively as a scientific or educational association must be determined by the facts of its practices. If all be for the ultimate end for which it is organized, and it is organized exclusively for scientific or educational purposes, then it is so operated

even though in such operation it may engage in business with the view to profit. If, on the other hand, it indulges in practices as a part of its method of operation which make no contribution to its exclusive scientific or educational purposes and which are not merely incidental to its main purpose, then it cannot be said to be operated exclusively for scientific or educational purposes. Under the language of the act before us, appellant, to be exempt from the contributions to the unemployment compensation fund, must not only be organized exclusively for scientific or educational purposes, but must also be "operated" exclusively for such purposes.

Appellees argue, and the circuit court held, that evidence showing efforts on the part of appellant to suppress or oppose organizations providing medical care and hospitalization to their members on a risk-sharing basis, indicates that appellant is largely organized and operated for the economic benefit of its members. However, the fact that appellant has opposed efforts in the direction of so-called "group hospitalization" or opposed so-called "socialized medicine," and may have violated statutory law in so doing, does not of itself indicate that it is not organized and operating exclusively as a scientific or educational, or even as a charitable association. Most religious, charitable, scientific or educational associations, exclusively so operated, espouse causes deemed by them to be for the general good, and give to them devoted and sometimes militant support, though such causes may not be unanimously supported by thinking persons. Such is of the essence of freedom of thought and action as we know it in America. However, this court is not here concerned with the conduct of appellant in its endeavor to foster and promulgate what it, so far as the record shows, holds to be important to the public welfare. The question here is whether appellant is engaged in activities which take it from the realm of exclusive operation for scientific or educational purposes.

The method of carrying out its exempted charter purposes is of no consequence so long as its activities remain exclusively devoted to the operation of such exempted purposes.

The pivotal question in this case, therefore, is whether appellant is operated exclusively for scientific and educational purposes. That it makes very substantial contributions to those purposes and to the public good cannot be gainsaid. The record shows appellant to be one of the outstanding agencies of investigation in that most important field of medical research and it contributes much in funds and effort to the work of bringing about better health conditions. Such efforts and expenditures are indubitably in the furtherance of its purposes as stated in its charter.

Whether appellees' contention that appellant is not exclusively operated as a scientific or educational association, and so not within the statutory exemption, is well taken turns primarily on the meaning of the exempting clause. The act recognizes that a corporation organized and operated exclusively for scientific and educational purposes may have an income without any limitation as to the source thereof, but the destination of such income does affect the test of exemption. *Trinidad* v. *Sagrada Orden De Predicadores,* 263 U. S. 578, 68 L. ed. 458.

The exemption of the statute was evidently made in recognition of the benefit which the public derives from the corporate activities of such associations as appellant, which activities are not carried on for private gain; and the fact that it owns productive properties which enable it to carry on the objects for which it is organized does not alter or enlarge the purpose for which the corporation is created and conducted. (*Chicago Home for Girls* v. *Carr,* 300 Ill. 478; *Northwestern University* v. *People,* 99 U. S. 309, 25 L. ed. 387; *Congregational Sunday School and Publishing Society* v. *Board of Review,* 290 Ill. 108.) So, if appellant is organized and operated exclusively for scientific or educational purposes and no part of its net earn-

ings inures to the benefit of its members, it is not liable for contributions under the Unemployment Compensation Act. When income or activities, though not of themselves derived from a scientific or educational purpose, are nevertheless used or expended for such charter purposes of the association, neither such income nor activities takes away the scientific or educational character of the association. *People* v. *Young Men's Christian Ass'n,* 365 Ill. 118.

We come, then, to consideration of the activities which, appellees argue, show that appellant is not operated exclusively for scientific or educational purposes. The fact that most of its activities do inure to the public benefit is not alone sufficient to meet the requirements of the exemption provisions of the statute. The test is not a balance or equation to be found between those which do and which do not fulfill the purpose of its organization. The question is whether there is a substantial part of its activities which in nowise contributes to the exempted purposes of its organization and cannot be said to comply with the exemption features of this act. The act must be liberally construed to the end that provision be made for unfortunate persons out of employment. (*Zehender & Factor, Inc.* v. *Murphy,* 386 Ill. 258; *Oak Woods Cemetery Ass'n* v. *Murphy,* 383 Ill. 301.) In the last-cited case attention was called to the reliance placed upon cases arising under the Workmen's Compensation Act, the Federal Labor Standards Act, and the Federal Bankruptcy Act. It was held that decisions under these acts cannot be of avail; that the Unemployment Compensation Act is far different in its basic purposes from the other acts referred to. Nor are the decisions and rules of the Federal Bureau of Regulations, relating to social security tax, binding on the courts. *Oak Woods Cemetery Ass'n* v. *Murphy,* 383 Ill. 301; *Grant Contracting Co.* v. *Murphy,* 387 Ill. 137; *Karlson* v. *Murphy,* 387 Ill. 436.

It follows, from construction heretofore placed on this act by this court, that the word "exclusively" should be given its literal meaning, and if appellant is being operated in any substantial part for other than scientific or educational purposes and such operations are not merely incidental to such main purposes and do not in any way contribute to those purposes, it cannot be said to be exclusively operated for such purposes. "Exclusive" is defined by standard lexicographers as "single," "sole," or "undivided."

It is conceded that appellant devotes a substantial portion of its efforts and of its income toward protecting and furthering economic benefits to the individual members of the association. The legislative power of the association is vested in a House of Delegates which creates the policy of the association. The House of Delegates has adopted rules for internal government which are characterized as Principles of Medical Ethics, article 6 of which deals with compensation. This article has to do with controlling practices of its members with reference to fees, declaring it unprofessional for a physician to dispose of his services under conditions which interfere with reasonable competition among physicians, and provides that medical services should be paid for by the patient in accordance with his income status. An examination of these principles makes it apparent that they promote the same objects as rules of trade associations, labor unions and the like, with respect to labor standards, competition and prices, and it has power to enforce its rules as to practice or as to the acceptance of its members as consulting staff of hospitals. Under these conditions, a hospital finds itself scarcely able to withstand the pressure brought by appellant for the retention on its staff of members of appellant association.

There is no question of the right of professional men to organize, the same as labor or businessmen, nor is it in any wise unprofessional or discreditable that they take an

interest in the economic welfare of their membership, but it does affect the question whether they are operated exclusively for scientific or educational purposes. As was said in *Jockey Club* v. *Helvering,* 76 Fed. 2d 597, "But though additions to the stock of knowledge may come out of these activities of the club, it was not exclusively scientific. In the main it was organized to protect and enjoy the sport of horse racing, to keep out dishonorable practices, to establish the standards of gentlemen sportsmen. Those purposes are laudable, but they are far afield from science." So it is that an organization of professional men, business men or laborers, which is not exempt under this act, may likewise be for a laudable, though not exempted, purpose.

Appellant also maintains and operates a bureau known as a "Bureau of Medical Economics." As shown by the record, this bureau, during the year 1938, spent a substantial portion of over $35,000 for the printing and issuance to its membership of such tracts as "Collecting Medical Fees," and "Organized Payments for Medical Services," giving to its membership information used by commercial collection agencies. That bureau also maintains complete records of professionally controlled collection agencies which provide physicians with data as to the financial status of the patient, and deals with the information as to the collection of accounts, provides fee schedules, and the like. These purposes, it must be admitted are laudable and in the interest of success of the membership of the appellant, whose success contributes, incidentally at least, to the success of the appellant, but these are not activities which make for or assist in the primary purpose of a scientific or educational association. There is little distinction to be seen, therefore, between that feature of its work and the work of a Bar Association, Labor Union, Better Business Bureau, or a Retail Merchants' Association. These purposes, as indi-

cated by the operations of its Bureau of Medical Economics, are not substatntially different from such policies in these last-named associations.

The burden is upon the appellant to prove that it has satisfied the exemption requirements set forth in section 2(f)(6)(G). (*Zehender & Factor, Inc.* v. *Murphy,* 386 Ill. 258; *Zelney* v. *Murphy,* 387 Ill. 492.) We are convinced, from the record here presented and under the view which this court has taken of the exemptions under the Unemployment Compensation Act, that appellant is not exempt from contributions under that act. The judgment of the circuit court is affirmed.

*Judgment affirmed.*